IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2013 SEP -3  AM II: 51

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

LISA KRAMER,

                         **Plaintiff,**

-vs-                                                 **Case No.  A-12-CA-700-SS**

JP MORGAN CHASE BANK N.A.,
                          **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment [#14], Plaintiff Lisa Kramer's Response [#15], and JPMorgan's Reply [#16]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

In 2005, non-party Bryan Kastleman executed a Home Equity Line of Credit Agreement for up to $250,000 (the Note), and an accompanying Deed of Trust encumbering the real property located at 17 Ehrlich Road, Austin, Texas 78746. Simultaneously with the Deed of Trust, the parties executed a "Home Equity Acknowledgment, Representations, and Agreement" (the Acknowledgment), which stated, among other things: "You and we are closing the Equity Credit on the Date of Closing Indicated above at your main office or branch office, or the office of a title company or an attorney." Def.'s Mot. Summ. J. [#14-6], Ex. E. Both the Deed of Trust and the Acknowledgment are notarized and bear the signatures of both Kastleman and Plaintiff Lisa Kramer,

his wife at the time (and now his ex-wife). Prior to closing the loan, JPMorgan sent Kastleman a "commitment letter" which included a rider explaining the extension of credit was "SUBJECT TO LISA KRAMER KASTLEMAN SIGNING THE MORTGAGE AND NOTICE OF RIGHT TO CANCEL DOCUMENTS AT CLOSING." *Id.* [#14-8], Ex. G. Kramer, however, alleges she never signed any of the loan documents. She claims her signature was forged, and presents testimony from a handwriting expert identifying her signature as a forgery.

Kramer further contends she had no knowledge of this loan until 2008, when she and Kastleman explored selling their home and a realtor informed Kramer of the second lien. On February 5, 2013, during a hearing in Kramer and Kastleman's divorce proceeding, Kramer apparently wrote a check to JPMorgan for $249,910.71, in order to pay off the Note and "preclude the possibility of a receiver being appointed to sell [Kramer]'s homestead to pay off the [JPMorgan] lien." Pl.'s Resp. [#15], at 3. On April 18, 2013, JPMorgan released its lien created by the Deed of Trust.

Prior to the payoff, Kramer filed this lawsuit, alleging the following causes of action: (1) violations of the Texas Constitution, specifically TEX. CONST. art. XVI, § 50(a)(6), because Kramer did not sign the loan documents and because the loan was not closed at the office of the lender, a title company, or an attorney; (2) quiet title; (3) fraudulent presentment pursuant to Texas Civil Practice and Remedies Code section 12.002; and (4) civil conspiracy. Kramer seeks reimbursement of all loan payments made and a declaratory judgment declaring JPMorgan's lien void. JPMorgan has moved for summary judgment.

## Analysis

### I.    Motion for Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Application

As an initial matter, Kramer represents in her Response she does not contest granting judgment in favor of JPMorgan on her quiet title and civil conspiracy claims, as well as her request for declaratory relief, because JPMorgan has released its lien on the property. Accordingly, the Court GRANTS JPMorgan's motion as to those claims as agreed. The Court now turns to the two remaining causes of action.

### A.    Texas Constitution

The Texas Constitution's homestead provision includes a number of homeowner protections and lender requirements. Relevant here are two: (1) "a lien on a homestead is valid only if it 'is closed [] at the office of the lender, an attorney at law, or a title company," *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013) (quoting TEX. CONST. art. XVI, § 50(a)(6)(N)); and (2) a lien on a homestead is valid only if it "is made on the condition that . . . the lender . . . shall forfeit all principal and interest . . . if the lien was not created under a written agreement with the

-4-

consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents," TEX. CONST. art. XVI, § 50(a)(6)(Q)(xi). Kramer asserts claims under each of these provisions.

JPMorgan argues these claims fail for three reasons: (1) both claims are barred by the four-year statute of limitations; (2) Kramer "lacks standing" to assert the Section 50(a)(6)(N) claim, by which JPMorgan means Kramer failed to provide notice to JPMorgan of the incorrect closing location; and (3) Kramer has no evidence the closing occurred anywhere other than one of the required locations.

The Fifth Circuit recently considered whether Section 50(a)(6) claims are subject to a limitations period. *Priester*, 708 F.3d at 673–74. While recognizing the Texas Supreme Court has not spoken on the issue, the Fifth Circuit surveyed the relevant state and federal case law and determined Texas's four-year residual limitations period does apply to Section 50(a)(6) claims. *Id.* at 674. The *Priester* court also considered when a Section 50(a)(6) claim accrues. *Id.* at 675–76. The court concluded the "legal injury rule"—the traditional notion a claim accrues when a legal injury occurs, regardless of the plaintiff's knowledge of the injury—applies to Section 50(a)(6) claims. *Id.* Accordingly, Section 50(a)(6) claims are subject to a four-year statute of limitations, and the limitations period begins to run at the time the allegedly unconstitutional lien is created. *Id.* at 676.

Applying those rules, Kramer's claims are barred by the statute of limitations. First, there is no doubt the four-year limitations period applies, as *Priester* expressly held. Kramer argues *Priester* is not controlling because it dealt only with claims under Section 50(a)(6)(Q)(x), whereas one of her claims arises under Section 50(a)(6)(Q)(xi). But *Priester* did not distinguish between sub-subparagraphs; it addressed "Section 50(a)(6) claims," which plainly encompasses Kramer's claims

here. *See, e.g.*, 708 F.3d at 673–74 (referring to "claims under Section 50(a)(6)," "a Section 50(a)(6) defect," "constitutional infirmities under Section 50(a)(6)"). Additionally, there is no principled reason to distinguish between these types of claims as Kramer suggests. The only authority Kramer relies upon held the four-year limitations period does not apply to "[e]quitable claims to recover property," a carve-out in the residual limitations statute. *See Smith v. JPMorgan Chase Bank, Nat'l Ass'n*, 825 F. Supp. 2d 859, 868 (S.D. Tex. 2011); TEX. CIV. PRAC. & REM. CODE § 16.051. The *Smith* court reached this conclusion because it believed any constitutionally noncompliant lien is "void *ab initio*." *Id.* at 861. The Fifth Circuit expressly rejected *Smith*'s premise and conclusion, which it called "contrary to the constitutional scheme." *Priester*, 708 F.3d at 674 n.4.[1]

Second, Kramer's claims accrued in 2005, when the allegedly unconstitutional lien was first placed on her homestead. The four-year limitations period expired in 2009, several years before Kramer filed this lawsuit in 2012. Kramer seeks to invoke the "discovery rule," and argues she could not have discovered the injury in 2005 because she did not know her husband executed the loan. This argument is foreclosed by *Priester*, which refused to apply the discovery rule to Section 50(a)(6) claims. 708 F.3d at 675–76. Accordingly, Kramer's claims under Section 50(a)(6) accrued when the wrongful act caused her legal injury, "regardless of when [she] learn[ed] of that injury." 708 F.3d at 675 (internal quotation marks omitted).

Kramer also constructs an elaborate argument positing the loan never "closed" because the "closing" could not occur without her (valid) signature. The Court rejects this argument for two

---

[1] Kramer further extrapolates from the logic of *Smith* and argues Section 50(a)(6)(Q)(xi) claims are distinguishable from Section 50(a)(6)(Q)(x) claims because the former are not curable, while the latter are. This is simply wrong, as Section 50(a)(6)(Q)(xi) explicitly contemplates subsequent consent as a means of curing the violation. TEX. CONST. art XVI, § 50(a)(6)(Q)(xi).

reasons. First, Kramer has not cited a single case adopting her position, or even discussing her interpretation of the law as a plausibly correct one. Second, if Kramer's argument were correct, there was never a "closing" and therefore never any loan; even though money passed to Kastleman, neither he nor Kramer would be able to invoke the protections of Section 50(a)(6) because no "extension of credit" was made. While this result would entitle JPMorgan to judgment as a matter of law, it would also be absurd, and fly in the face of the Texas Constitution, which expressly contemplates a non-consenting owner consenting *after* the (unconstitutional) closing and thus curing any constitutional infirmity. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(xi) ("the lender . . . shall forfeit all principal and interest of the extension of credit . . . if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, *unless each owner and each owner's spouse who did not initially consent subsequently consents*") (emphasis added).

Alternatively, with respect to Kramer's Section 50(a)(6)(N) claim, the Court finds JPMorgan is entitled to summary judgment because Kramer has not produced any evidence the closing occurred anywhere other than an authorized location. When Kastleman executed the loan documents, he signed the Acknowledgment, which indicated the closing occurred at one of the constitutionally appropriate locations. Def.'s Mot. Summ. J. [#14-6], Ex. E. The notary who notarized the loan documents testified the closing occurred at one of the three appropriate locations, because although she could not recall the exact location, she had "never closed a HELOC any other place but at one of those three places." *Id.* [#14-11], Ex. J, at 73.[2] Because JPMorgan has presented some competent

---

[2] The notary also testified she could not check her records for the exact location because she does not retain her notary books for more than six years. Def.'s Mot. Summ. J. [#14-11], Ex. J, at 12–13. Similarly, the settlement agent which chose the closing location dissolved in 2009. *Id.* [#14-12], Ex. K.

summary judgment evidence indicating the closing occurred at an appropriate location, Kramer can only avoid summary judgment by presenting some evidence to the contrary.

Initially, Kramer does not even attempt to identify contrary evidence; she simply repeats her argument no closing occurred at all. The Court has already rejected this argument. In defense of her fraudulent presentment claim, however, Kramer suggests the closing occurred at the office of the settlement agent in Rochester, New York. Unfortunately, Kramer's argument proves more than the evidence she cites. First, Kramer points to the commitment letter JPMorgan sent to Kastleman, which directs all correspondence to a post office box in Rochester. Def.'s Mot. Summ. J. [#14-7], Ex. F. There is no indication this address was also the closing location. Second, Kramer points to two documents referencing the settlement agent and its Rochester address. *Id.* [#14-8, 9], Exs. G, H. Once again, the fact the settlement agent maintained a New York address does not indicate the closing took place in New York. Further, one of the documents explicitly states, "You [Kastleman] and the settlement agent will determine the time and location of the closing." *Id.* [#14-8], Ex. G. There is no evidence suggesting Kastleman and the settlement agent chose any location in Rochester, New York, or any location other than a JPMorgan office, a title company office, or an attorney's office.

The Court therefore finds JPMorgan is entitled to summary judgment on Kramer's Section 50(a)(6) claims because both claims are barred by the applicable statute of limitations, and the Section 50(a)(6)(N) claim is unsupported by any summary judgment evidence.

**B.      Fraudulent Presentment**

It is a violation of Texas's fraudulent presentment statute to "make, present, or use a document or other record with: (1) knowledge that the document or other record is a fraudulent court

-8-

record or a fraudulent lien . . . ; (2) intent that the document or other record be given the same legal effect as a court record or document of a court . . . evidencing a valid lien . . . ; and (3) intent to cause another person to suffer: (A) physical injury; (B) financial injury; or (C) mental anguish or emotional distress." TEX. CIV. PRAC. & REM. CODE § 12.002(a); *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.). JPMorgan argues it is entitled to summary judgment on Kramer's fraudulent presentment claim because: (1) Kramer only sought to vacate the now-released lien, rendering the claim moot; (2) Kramer has no evidence JPMorgan intended the Deed of Trust to have the same effect as a court record; (3) Kramer has no evidence JPMorgan had knowledge the Deed of Trust was fraudulent; and (4) Kramer has no evidence JPMorgan intended to cause her injury.

JPMorgan's first argument seeks to hold Kramer's counsel to their representations, and as such is well-taken. First, Kramer's original petition, under the "Fraudulent Lien" cause of action subheading, asked only for declaratory relief vacating the lien, not money damages. Not. of Removal [#1-1] (Orig. Pet.), ¶ 15. Further, while Kramer's petition included a boilerplate request for damages in the Prayer, Kramer did not allege she actually suffered any physical, financial, mental, or emotional injuries, nor did she allege she was seeking such damages. Second, in her initial disclosures, Kramer sought only $250,000 in damages—in other words, she sought the principal and interest on the loan, which she would be entitled to under her Section 50(a)(6) theories, but not under the fraudulent presentment statute. Def.'s Mot. Summ. J. [#14-13], Ex. L. Similarly, in response to JPMorgan's interrogatories, Kramer identified her only damages as her "constitutional damages" of $250,000. *Id.* [#14-14], Ex. M. Because Kramer pleaded and represented throughout the litigation she sought only declaratory relief under Section 12.002, the Court finds JPMorgan is entitled to judgment on this claim because its release of the lien renders Kramer's claim moot.

Alternatively, the Court will consider JPMorgan's arguments on the merits of Kramer's claim. JPMorgan contends there is no evidence it intended the Deed of Trust to "be given the same legal effect as a court record or document of a court . . . evidencing a valid lien or claim" against real property. TEX. CIV. PRAC. & REM. CODE § 12.002(a). JPMorgan reads the statute to apply only to literal court documents, such as judgments, not traditional property records like deeds of trust. Texas courts have not read the statute so restrictively. *Centurion Planning Corp., Inc. v. Seabrook Venture II*, 176 S.W.3d 498, 505 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding the statute "does not limit liability only to fraudulent court documents"). Moreover, JPMorgan misreads the statute, which does not require the fraudulent document to *actually be* a court document, but merely to be *intended to be given the same effect* as a court document. Filing a Deed of Trust evidencing a lien on real property in the county property records is unquestionably intended to give JPMorgan an enforceable, legal interest in the encumbered property, just as surely as if JPMorgan had a court judgment in hand.

JPMorgan's other evidentiary arguments are more persuasive. Kramer cannot point to any evidence showing JPMorgan knew, or even had reason to suspect, Kramer's signature was forged (and therefore know the Deed of Trust was fraudulent). *See* Def.'s Mot. Summ. J. [#14-4], Ex. C, at 122 (Kramer testifying, "I don't know. I don't know. I don't what they [JPMorgan] would have."). Kramer argues JPMorgan knew the closing occurred at an unauthorized location in Rochester, New York, and thus knew the lien was invalid, but once again the documents she cites are no evidence of the actual location of the closing. Similarly, Kramer can point to no evidence JPMorgan intended to cause her financial (or any other) injury by filing the Deed of Trust. Her only argument is wholly conclusory and assumes the validity of her cause of action. *See* Pl.'s Resp. [#15], at 14 ("The

summary judgment evidence further reflects that, by filing the clearly unconstitutional and invalid lien on her homestead, Defendant intended to cause Plaintiff (whom Defendant knew full well was the co-owner of the homestead subject to Defendant's lien) 'financial injury'." (citing no evidence)); *see also* Def.'s Mot. Summ. J. [#14-4], Ex. C, at 127 (Kramer testifying, "I don't know what they [JPMorgan] intended to do. . . . Their intent was just to make money. . . . I don't know if they intended to [cause financial injury]").

The Court finds JPMorgan is entitled to summary judgment on Kramer's fraudulent presentment claim because her claim is moot, and she has presented no evidence of JPMorgan's knowledge of the lien's fraudulent nature or of JPMorgan's intent to cause her any injury.

### Conclusion

Accordingly,

IT IS ORDERED that Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment [#14] is GRANTED.

SIGNED this the __3rd__ day of September 2013.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE